**RUTA FOU and TOGAIIA FOU, Plaintiffs,**

**v.**

**TALOFA, INC. dba TALOFA VIDEO, Defendant.**

High Court of American Samoa
Trial Division

CA No. 62-97

June 26, 1998

Before RICHMOND, Associate Justice, TAUANU'U, Chief Associate Judge, and ATIULAGI, Associate Judge.

Counsel: For Plaintiffs, Katopau T. Ainu'u
For Defendant, Aitofele T. Sunia

ORDER DENYING EACH PARTY'S MOTION FOR
RECONSIDERATION OR NEW TRIAL

Plaintiffs Ruta Fou ("Ruta") and Togaiia Fou (collectively "the Fous") brought suit against defendant Table, Inc. dba Talofa Video ("Talofa Video") for defamation in connection with posting a copy of the Fous' check at Talofa Video's place of business. The trial was held on October 24, 1997 with counsel for both sides present. On February 9, 1998, we held Talofa Video liable for defamation by libel and awarded the Fous

153

$6,000 in damages, plus 'actual costs of suit."

On February 19, 1998, Talofa Video timely moved for reconsideration or new trial. This motion was heard on March 23, 1998. On March 2, 1998, the Fous' counsel flied an affidavit setting forth $4,072.50 in attorney's fees as the Fous' claim for "actual costs of suit." We advised the Fous' counsel at the March 23 hearing that "actual costs of suit" does not include attorney's fees. On March 25, 1998, the Fous moved for reconsideration or new trial on the issues of recovering their attorney's fees and the adequacy of the damages awarded to them.

## Discussion

### A. Talofa Video's Motion

Talofa Video essentially raises three issues in its motion. First, it maintains that two of the court's factual findings are against the weight of the evidence: (a) that the posted check was publicly displayed and (b) that the posted check conveyed a bad check message. Second, it claims that the posted check was a privileged communication. Third, it argues that, in any event, the posted check could not be libel *per se*, and the Fous must therefore prove special damages.

### 1. Fact Findings

#### a. Public Display

Talofa Video claims that the check was continuously posted at a location outside of the view of anyone except its employees. It attacks the credibility of the Fous' witness, the customer who testified that she saw the check in plain view at Talofa Video's store. We found that by the action of one of Talofa Video's employees, the Fous' check became visible to the general public as well as to Talofa Video's employees. We made this finding after carefully weighing all the testimony, including the customer's demeanor while testifying, and other evidence. We are not now persuaded in any degree to change this finding.

#### b. Bad Check Message

Talofa Video insists that even if an employee told the testifying customer that the check was unacceptable,[1] the Fous' check was not necessarily

---

[1] Talofa Video also suggests that this employee's statement is inadmissible hearsay. Talofa Video did not object to this evidence at the trial. Moreover, the statement was not offered for the truth of the matter asserted and thus is not hearsay. *See* T.C.R.Ev. 801(c).

unacceptable as a bad check (a check passed without sufficient funds or without an account). However, the customer, a storekeeper herself, testified that bad checks are commonly posted by retail stores in American Samoa to remind sales clerks not to accept any more checks from the drawers, and that she thought the Fous' check was a bad check when she saw it. The bad check perception is clear under the evidence, with or without the employee's unacceptability statement. We stand by this finding.

## 2. Privilege

Originally, we summarily concluded that the evidence did not present any genuine privilege issue. While Talofa Video did little, if anything, to advance and develop the privilege issue during the trial, we will address it in appropriate depth now.

Talofa Video asserts that the posted check was a privileged communication under A.S.C.A. § 43.5202, which in relevant part reads:

> A privileged publication is one made:
> (3) in a communication without malice to a person interest[ed] therein by one who is also interested or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication [is] innocent or who is requested by the person interested to give the information;

Talofa Video argues that it posted the Fous' check as a business management measure to inform its employees of its policy not to accept checks drawn on banks in business outside of American Samoa. It claims that the posting for this purpose was a conditionally privileged communication under § 43.5202(3) and thus was exempted from defamation liability.

Under the concept enunciated by § 43.5202(3), a communication published without malice is conditionally privileged when the publisher reasonably believes that the defamatory matter communicated affects a sufficiently important interest of the publisher and the recipient's knowledge of this information serves to lawfully protect the publisher's interest. *See* RESTATEMENT (SECOND) OF TORTS § 594 (1977). The common law used the conditional privilege as a means of "balancing the interest of the defamed person in the protection of his reputation against the interests of the publisher, of third persons and of the public in having the publication take place." *Id.* § 594 cmt. b. The conditional privilege is lost if the publisher abused the privilege. *Id.* § 599.

155

■ The law concerning conditional privilege abuse in cases of defamation of private persons was dramatically impacted by *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S. Ct. 2997, 41 L.Ed.2d 789 (1974). Essentially, the Supreme Court held that under the provisions protecting free speech and press in the First Amendment to the United States Constitution, the states cannot impose liability without fault on the publisher of defamatory matter injurious to a private person. *Id.,* 418 U.S. at 344, 94 S. Ct. at 3009, 41 L.Ed.2d at 809. Article I, § 1 of the Revised Constitution of American Samoa has the same free speech and press provisions.

We conclude that the later posting of the Fous' check in public view was not privileged. Members of the public were not among the particular recipients of information who needed to know Talofa Video's off-island check policy. The public's knowledge of a check conveying the appearances of a bad check did not protect Talofa Video's licit interests. *See* discussion in RESTATEMENT (SECOND) OF TORTS Chapter 25, Topic 3, Special Note on Conditional Privileges and the Constitutional Requirement of Fault.

■ We agree, however, that the initial posting of the Fous's check to only Talofa Video's employees served its legitimate business purposes and was conditionally privileged at that point under A.S.C.A. § 43.5202(3). Assuming for discussion that the privilege continued when the check was publicly displayed because the off-island check policy was still conveyed to the employees, Talofa Video remained immune from liability unless the conditional privilege was lost through malicious abuse.

*Gertz* defined malice as present when the publisher either knows that the published matter is false and defamatory or acts in reckless disregard as to its truth or falsity. *Id.,* 418 U.S. at 330-32, 94 S. Ct. at 3002, 41 L.Ed.2d at 799-801. The RESTATEMENT adopts this standard of malice as the level of abuse resulting in loss of the conditional privilege. RESTATEMENT (SECOND) OF TORTS § 600. We will apply the same standard in the present case.

■ It was not necessary to post the check to convey Talofa Video's off-island check policy to its employees. The employees could have been easily instructed on this policy by either an oral or written directive. The check could have been displayed with an appended notation of this policy. Talofa Video's ill-advised action was manifested when the check became public information. Talofa Video failed, without showing any justification, to return the check to its hidden position and ignored the consequences of the public display. In sum, at the very least, Talofa Video acted in reckless disregard of the truth or falsity of the defamatory

character of the publicly posted check.

Therefore, we further conclude that Talofa Video lost the benefit of any conditional privilege that may have been afforded by A.S.C.A. § 43.5202(3) through its malicious conduct.

## 3. Damages

■ Talofa Video declares that the posted check did not imply that Ruta had committed a criminal act and, thus, the defamatory act, if any, was not libel *per se*. This argument is without merit. While it was publicly displayed, the posted check clearly imparted the idea that Ruta had passed a bad check, a criminal act under the laws of American Samoa. A.S.C.A. § 46.4118. We applied the common law correctly in our initial discussion. Thus, the posted check was libelous while it was visible to the general public and was actionable *per se* without proof of actual damages. RESTATEMENT (SECOND) OF TORTS § 569. The Supreme Court preserved the common law in situations, like the present one, involving private concerns of a defamed private person. *Dun & Bradstreet*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

Accordingly, Talofa Video's motion for reconsideration or new trial will be denied.

## B. The Fous' Motion

The Fous address two issues in their motion. First, they assert that the court erred because the Fous' recovery did not include their attorney's fees. Second, they claim that the $6,000 awarded as damages for the harm to their reputation and their emotional distress was not adequate compensation. A threshold question on the timeliness of the Fous' motion is also present.

## 1. Timeliness of the Motion

■ The Fous' motion was filed on March 25, 1998, 44 days after the court's opinion and order was entered on February 9, 1998. A motion for a new trial must be filed within 10 days after the announcement of the judgment. A.S.C.A. § 43.0802(a). The Fous seek to excuse the late filing of their motion, claiming that the meaning of the court's award of "$6,000 in damages plus actual costs of suit" on February 9 was not made clear to them until the hearing on Talofa Video's motion for reconsideration or new trial on March 23, 1998.

We will discuss this excuse further and other aspects of the Fous' motion below to edify the parties. However, we hold here that this excuse is

157

without merit, and that the Fous' motion was filed untimely. The Fous' motion will, therefore, be denied on this jurisdictional point alone.

## 2. Costs of Suit and Attorney's Fees

■ "Costs of suit," "court costs," and "costs" are exchangeable terms which are specific and narrow in scope. Usual costs include filing fees, process and other service fees, and similar costs which are fixed by law and are necessarily paid to the court or its officers. A.S.C.A. § 43.0101. A prevailing party is entitled to recover costs as a matter of course, in the absence of a different provision by statute, court rule, or court order. T.C.R.C.P. 54(d). The modifier "actual" does not in any sense expand the scope either of the meaning of these terms or of the recoupment of costs.

■ Recovery of attorney's fees and recovery of costs of suit are separate and unrelated issues. The usual rule on attorney's fees is that each party bears the burden of this expense. *See Samoa v. Gibbons,* 3 A.S.R.2d 121, 123 (Trial Div. 1986). In the absence of a contractual, statutory, or other legal basis, attorney's fees are not recoverable. *See Samoa Products, Inc. v. Pereira,* 3 A.S.R.2d 45, 46 (Trial Div. 1986); *Black's Law Dictionary* 312 (5th ed. 1979). American Samoa has not allowed reimbursement of attorney's fees in defamation actions by statute. The Fous have neither pled nor proven any other legal basis to obligate Talofa Video to pay this litigation expense.

■ The Fous' counsel must have known, or certainly should have known, these elemental precepts of costs and attorney's fees when he undertook the Fous' representation.[2]

---

[2] Attorney's fees in this case are a matter of agreement between the Fous and their counsel at this point. However, we have several criticisms about the detailed statement of the attorney's fees filed by Fous' counsel for the court's review and approval.

We are surprised that the Fous' counsel has charged them attorney's fees based on hourly rates. Tort actions are generally undertaken on a contingent fee arrangement providing the attorney a percentage of the client's recovery. One-third of the recovery awarded after trial is the common standard.

When the court is properly called upon to approve hourly fees, we usually apply a standard of $100 per hour for out of court services and $125 per hour for in court services. The Fous' counsel is using a rate of $150 per hour for in court services.

The Fous' counsel states that he spent 2.3 hours drafting the complaint and summons, 2.9 hours drafting a request for admissions, .45 hour

## 3. Adequacy of the Damages

 We have taken another look at the $6,000 in damages that we initially awarded the Fous. We do not agree with the Fous' contention that this is an appropriate case for application of a "deep-pocket" theory of recovery simply because Talofa Video is a reasonably successful business. We believe that the injury to the Fous' reputation and their consequential emotional distress is not lasting. The $6,000 awarded is an adequate measure of the damages, both compensatory and exemplary, and will not be modified.

## Order

1. Talofa Video's motion for reconsideration or new trial is denied

2. The Fous' motion for reconsideration or new trial is also denied.

It is so ordered

---

drafting a motion to set the trial date and the hearing notice, 5.7 hours on legal research, and 10.95 hours drafting a trial memorandum, a total of 22.3 hours on these matters among other out of court services. Defamation law is relatively complex and has seen significant change in recent years. However, in this case, the fact situation is simple, and the prospective damages were not monetarily great. We think that even if counsel devoted this number of hours to these office matters, the resulting fee calculations substantially overstate their value to his clients.

The Fous' counsel also states that he spent 1.3 hours in court at two trial setting hearings, which took a total of three minutes according to the clerk's minutes. He further states that the trial required 4.65 hours, while the clerk's minutes reflect that the trial lasted one hour and 25 minutes, including a recess. Counsel may spend some unproductive time traveling to and from court and waiting in court to be heard on a matter. However, ordinarily clients cannot be justifiably charged for this time. We do not think that attorney's fees for in court services are reasonably based on anywhere near 5.95 hours in this case.

The Fous' counsel has charged $4,072.50 for his services in this case. We think that the reasonable value of those services is approximately $1,500 and certainly no more than $2,000.